ALEXANDER and others, Assignees, etc., *v.* GALT.

*(District Court, N. D. Illinois.* November 1, 1881.)

1. BANKRUPTCY—PREFERENCES—WHEN VALID.
    Preferential payments, made more than three months before bankruptcy, cannot be set aside in favor of the assignee in bankruptcy.

2. ASSIGNEES.
    Assignees in bankruptcy do not succeed to the rights of assignees in insolvency whose assignment they have had set aside.

In Bankruptcy.

*McFarren,* for plaintiffs.

*Chas. H. Roberts* and *Manahan & Ward,* for defendant.

BLODGETT, D. J. This is an action of trover to recover a promissory note made by one Williams to the bankrupts, Patterson & Co., and by them, as is alleged by plaintiffs, fraudulently indorsed and delivered to defendants. The material facts, as shown without dispute in the proofs, or by stipulation in writing, are as follows:

Patterson & Co. were engaged in business as bankers at Sterling, in this district, from 1869 to the sixteenth of January, 1878. On the seventeenth of January, 1878, said firm made a voluntary assignment of their property to one Roswell Champion, in trust, for the payment of their debts, but Champion, the assignee, did not file his inventory and bond with the clerk of the county court of Whiteside county, where the parties resided, pursuant to the statute of this state in regard to voluntary assignments, approved May 22, 1877, until the fifth of February, 1878.

On the twenty-fourth day of April, 1878, a petition in bankruptcy was filed in this court against Patterson & Co., on which they were subsequently adjudged bankrupts, and plaintiffs have been duly appointed and qualified assignees; and, under a decree of this court, in a suit brought by plaintiffs as assignees in bankruptcy, the assignment to Champion was set aside on the twentieth of July, 1879. It also appears in proof, and is undisputed, that defendant, Galt, was treasurer of a cheese factory in the vicinity of Sterling, and kept his funds as such treasurer on deposit with Patterson & Co., and that on the sixteenth of January, 1878, there was to his credit on this deposit account about $1,540; that about two months before the sixteenth of January, defendant told J. M. Patterson, one of the firm, that the money to his credit as treasurer belonged to the cheese factory, and that he would draw it out unless he was sure of getting it or having it protected, and that Patterson then told him he should be protected. On the sixteenth of January Patterson & Co. were insolvent and on the eve of making an assignment for the benefit of their creditors, when J. M. Patterson took the note in question from the files of bills receivable belonging to his banking firm, computed the interest on it to that date, and charged the sum then due for principal and interest to the defendant's account as treasurer, indorsed the note with the firm name, and placed it, in an envelope, before them in the bank vault, containing some

other papers belonging to defendant, and credited bills receivable with the proceeds of the note so charged defendant. During the business hours of the 16th the bank was kept open for business. The bank did not open on the morning of the seventeenth of January, and about 9 o'clock in the morning the deed of assignment was delivered to Champion, assignee, and he was placed in possession of the bank by giving him a key, although another key was retained by the firm, and the inventory was not completed until several days after. The note in question was never delivered to Champion, nor was it described in the inventory, and some time during the forenoon of the 17th defendant came to the bank, and, on being told what had been done in regard to the transfer of the note to him, assented to it, and took the note away. He has since brought suit upon the note against the maker and collected the amount due thereon.

Plaintiffs do not claim that this transaction is affected by the provisions of sections 5128 and 5129, as amended by section 10 of the act of June 22, 1874, but they insist that this property was conveyed by the bankrupt in fraud of his creditors, and can be attached under the provision of section 5046; or, in other words, that this transfer is so far tainted with actual fraud as to be voidable outside of the provisions of the bankrupt law. There can be no doubt that the title to property conveyed or converted by a bankrupt before bankruptcy, with a fraudulent *animus* or intent, passes to his assignee under section 5046, and the assignee can take steps to set aside the fraudulent transfer or conveyance. But a mere preference or payment of one creditor over another is not of itself fraudulent. As was said by the supreme court of Pennsylvania, Judge Strong delivering the opinion:

"An insolvent debtor may prefer one creditor to another, either by judgment, deed, or by any mode, if his motive be an honest intent to pay the preferred debt, although the unpreferred creditors be delayed or wholly prevented from obtaining payment. The payment of a debt to one creditor is no fraud upon another creditor." *York County Bank* v. *Carter*, 38 Pa. St. 446.

The principle which runs all through the cases is that to make a preferential payment of an indebtedness is not fraudulent; while if, under pretext of paying one creditor, a debtor conveys to him property of value largely in excess of the debt, with the design of thereby hindering and delaying other creditors, and securing some direct or indirect benefit to himself, the transaction may be deemed fraudulent.

Tested by this rule I can see no element of fraud in this transaction. There is no doubt that Patterson & Co. owed defendant, as treasurer, more than the amount of this note. Nor is there any doubt, from the proof, that he allowed the money to remain on deposit with them upon the assurance that he should be secured or protected. When Patterson & Co. saw that their failure was inevi-

table they had the right to make good the promise that he should be protected. It is true that if Patterson & Co. had been adjudged bankrupts within three months after the transfer of this note, their assignees in bankruptcy could have attacked this transfer as a preference contrary to the express provisions of the bankrupt law then in force, and perhaps set it aside. But the provisions of the bankrupt law, prohibiting preferential payments and conveyances, was not invoked in apt time, and this transaction is to be considered as if no bankrupt law had ever existed.

Complainants have cited a large number of decisions by the Iowa courts upon the statute of that state regulating assignments with preferences, and insist that as the statute of Illinois, in regard to voluntary assignments, approved May 22, 1877, was substantially copied from the Iowa statute, these decisions should be deemed controlling. There would seem to be no doubt that the doctrine of those cases is that if an insolvent debtor makes several preferential payments to creditors, or conveyances of property in payment of debts, in such sequence to each other, and to an assignment in trust for the benefit of creditors, that they are all to be deemed as essentially one transaction, the preference will be set aside as being in violation of the spirit of these statutes. *Lampson* v. *Arnold,* 19 Iowa, 480. And in this class of cases it has been held that the voluntary assignee can set aside the preference and recover the property transferred or money paid. These authorities only go to the point that if the transfer of this note to defendant was so intimately related to the assignment to Champion that they could be held to be one transaction, Champion could have held the note as against defendant. But when this court set the assignment to Champion aside, it did not place plaintiffs in his shoes as against defendant; that is, it does not follow, because Champion might have attacked this transfer as a preference, that, therefore, the plaintiffs can do so. They do not succeed to his rights of action under the Illinois statute, if he had any, but must rest upon their rights under the bankrupt law.

This, then, being at most only a preferential payment, made more than three months before bankruptcy, cannot be set aside in favor of plaintiffs. Defendant not guilty.